UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK FRELIGH,<br><br>    Plaintiff,<br><br>v.<br><br>ROC ASSET SOLUTIONS, LLC,<br><br>    Defendant. | Case No. 16-cv-00653-MEJ<br><br>**ORDER FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 12 |

## INTRODUCTION

Plaintiff Derek Freligh ("Plaintiff") brings this action against Defendant ROC Asset Solutions, LLC ("Defendant") based on violations of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Rosenthal Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788.30 et seq. Pending before the Court is Plaintiff's Motion for Default Judgment, in which Plaintiff requests the Court enter an order granting default judgment on his claims and awarding statutory damages in the amount of $2,000 plus $5,365.60 in attorney's fees and costs. Dkt. No. 12. No response has been received from Defendant. The undersigned finds this matter suitable for disposition without oral argument and hereby **VACATES** the June 30, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-(1)(b).

After carefully reviewing the motion and controlling authorities, the undersigned issues this Report and Recommendation. The undersigned **RECOMMENDS** the District Court **GRANT** the Motion for Default Judgment for the reasons set forth below. Further, as Defendant has not appeared in this case and it is has not been possible to obtain his consent to magistrate judge jurisdiction, the Clerk of Court shall **REASSIGN** this case to a district court judge for disposition.

**BACKGROUND**

In or around February 2015, Defendant placed collection calls to Plaintiff seeking and demanding payment for an alleged consumer debt. Compl. ¶ 12, Dkt. No. 1. Defendant called Plaintiff three times that month and all three times left a voicemail message for him, but failed to state the name of the company the caller was with or to meaningfully state that the call was from a debt collector. *Id.* ¶¶ 16-17, 18-19, 21-22. Defendant directed Plaintiff to call back at a telephone number that belongs to it. *Id.* ¶¶ 17, 20, 23.

On February 6, 2016, Plaintiff filed this case, alleging Defendant uses false, deceptive, and misleading means in connection with attempting to collect a debt by not identifying the purpose of its phone calls or that they are an attempt to collect a debt. *Id.* ¶ 24. Plaintiff brings one cause of action under the FDCPA and one under the Rosenthal Act. *Id.* ¶¶ 25-36. The Clerk of Court entered Defendant's default on May 3, 2016. Dkt. No. 9.

**DISCUSSION**

**A.    Jurisdiction and Service of Process**

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

1.    <u>Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Jurisdiction in this case arises pursuant to § 1692k(d) of the FDCPA, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount of controversy." Additionally, 28 U.S.C. § 1387 grants the Court supplemental jurisdiction over Plaintiff's Rosenthal Act claim.

### 2. Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992). Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011).

According to the Complaint, "Defendant is a national debt collection company located in Williamsville, New York." Compl. ¶ 10. "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005). Where there is no applicable federal statute governing personal jurisdiction, courts apply the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In California, a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10; *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 753 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."). As such, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

The Fourteenth Amendment Due Process Clause requires that an out-of-state defendant have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General

jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum. *Id.* at 415. If general jurisdiction exists, the forum has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.* Here, there is no indication Defendant has "substantial" or "continuous and systematic" contacts with California to establish general jurisdiction.

The Court may assert specific jurisdiction over a nonresident defendant if three requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). The plaintiff bears the burden of demonstrating the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff satisfies the first two parts of the test, the burden shifts to the defendant to "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). While all three requirements must be met, in considering the first two prongs, "[a] strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc).

Because Defendant contacted Plaintiff in California by telephone to collect Plaintiff's alleged debt, Defendant has performed acts or transactions within the forum. *Weakley v. Redline Recovery Servs., LLC*, 723 F. Supp. 2d 1341, 1344 (S.D. Cal. 2010), *clarified on denial of reconsideration*, 2010 WL 3033801 (S.D. Cal. Aug. 2, 2010) (citing *Panavision*, 141 F.3d at 1320). Further, Plaintiff's claims arise out of the telephone calls made by Defendant. *Id.* (citing *Panavision*, 141 F.3d at 1320).

In order to determine whether the exercise of jurisdiction is reasonable, a defendant "must

present a compelling case that the presence of some other considerations would . . . make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478 (internal quotation and citation omitted); *see also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). As Defendant has not presented any evidence to suggest litigation will be gravely difficult and inconvenient if litigated in California, the undersigned finds Defendant's communications with Plaintiff in California constitute contacts sufficient to demonstrate that Defendant is subject to personal jurisdiction here.

### 3. Service of Process

Additionally, the Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007). Here, the proof of service filed by Plaintiff demonstrates Defendant was properly served with Plaintiff's Complaint and summons on February 17, 2016, *see* Dkt. No. 5, and the Clerk of Court has entered Defendant's default for failure to respond, *see* Dkt. No. 9.

## B. Legal Standard – Default Judgment

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th

Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

### C. Application to the Case at Bar

Applying the foregoing *Eitel* factors to the case at bar, the undersigned finds default judgment is warranted in favor of Plaintiff.

#### 1. The Possibility of Prejudice to Plaintiff

The first factor the Court considers in determining whether to grant a default judgment is the possibility of prejudice to Plaintiff if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy. *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916 (C.D. Cal. 2010) (concluding the plaintiff would suffer prejudice if default judgment was not entered where the plaintiff had only received partial payment owed under a contract). As Defendant has not responded to Plaintiff's Complaint, Plaintiff will likely have no recourse if default judgment is denied. *See PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Therefore, the undersigned finds this factor weighs in favor of granting default judgment.

#### 2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors require the Court to look at the merits of the substantive claims and the sufficiency of the allegations in the Complaint. *Eitel*, 782 F.2d at 1471-72.

##### a. FDCPA

In his First Claim for Relief, Plaintiff alleges:

> a. Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff;
>
> b. Defendant violated §1692d(6) of the FDCPA by failing to disclose the name of the company in all communications placed with and for Plaintiff;
>
> c. Defendant violated §1692e of the FDCPA by using any other false, deceptive, or misleading representation or means in connection with the debt collection;

6

> d. Defendant violated §1692e(11) of the FDCPA by failing to communicate and contain the mini- Miranda warning: This is an attempt to collect a debt . . . communication is from a debt collector.

Compl. ¶ 25.

"In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004). As such, the statute is liberally construed to protect the "least sophisticated debtor." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993). This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." *Clomon*, 988 F.2d at 1318-19. An aggrieved party may recover actual damages, statutory damages and seek an award of attorney's fees and costs where the provisions of the FDCPA have been violated. 15 U.S.C. § 1692k(a).

### i. 15 U.S.C. § 1692d

Section 1692d prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d. The statute includes a non-exhaustive list of conduct that constitutes harassment, oppression or abuse, including "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Courts define "meaningful disclosure" as "requir[ing] that the caller [s]tate his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call." *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1074 (E.D. Cal. 2007); *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005). Applying this standard, the undersigned finds the messages left for Plaintiff did not satisfy the requirements of § 1692d(6) because Defendant failed to state the name of the company or to meaningfully state that the call was from a debt collector. *See id.* (holding that "defendant violated § 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's business in the messages left on plaintiff's answering machine."). Thus, Defendant violated 15 U.S.C. § 1692d.

///

ii. 15 U.S.C. § 1692e

Section 1692e prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e sets forth a non-exclusive list of conduct that constitutes a violation, including "[t]he failure to disclose in the initial . . . oral communication[] that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector. . . ." 15 U.S.C. § 1692e(11).

Section 1692a(2) defines "communications" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). As such, "it is clear the messages left by defendant on plaintiff's answering machine constitute 'communications' within the meaning of § 1692a(2)." *Costa*, 634 F. Supp. 2d at 1076; *see also Horowitz v. GC Servs. Ltd. P'ship*, 2015 WL 1959377, at *5 (S.D. Cal. Apr. 28, 2015) ("Courts have routinely recognized that voicemails are communications that must conform to the disclosure requirements of the FDCPA." (internal quotations and citations omitted)). Further, although there is no indication the messages mentioned specific information about Plaintiff's debt, § 1692a(2) applies to information conveyed "directly or indirectly." *Hosseinzadeh*, 387 F. Supp. 2d at 1116; *Koby v. ARS Nat. Servs., Inc.*, 2010 WL 1438763, at *3 (S.D. Cal. Mar. 29, 2010) (collecting cases finding that voicemail messages from debt collectors to debtors are "communications" regardless of whether a debt is mentioned in the message). In the present case, the messages Defendant left on Plaintiff's voicemail did not disclose the caller's identity or meaningfully state that the call was from a debt collector. Thus, Defendant violated § 1692e(11) because the messages left for Plaintiff did not convey the required information. *See id.*; *Costa*, 634 F. Supp. 2d at 1076.

b. *Rosenthal Act*

Plaintiff alleges "Defendant violated [section] 1788.17 of the [Rosenthal Act] by continuously failing to comply with the statutory regulations contained within the FDCPA, 15 U.S.C. § 1692 *et seq.*" Compl. ¶ 32. The Rosenthal Act is California's version of the FDCPA, as it "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir.

2012); *see* Cal. Civ. Code § 1788 et seq. Accordingly, whether an act "violates the Rosenthal Act turns on whether it violates the FDCPA." *Riggs*, 681 F.3d at 1100. Thus, for the same reasons set forth above, the undersigned finds Plaintiff has established a violation of the Rosenthal Act.

        3.    <u>The Sum of Money at Stake in the Action</u>

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014). Here, Plaintiff seeks $1,000 in statutory fees under the FDCPA, $1,000 under the Rosenthal Act, and $5,365.60 in attorney's fees and costs. Because this amount is neither substantial nor unreasonable and the statutory damages are tied to Defendant's misconduct, the fourth factor weighs in favor of default judgment.

        4.    <u>The Possibility of Dispute Concerning Material Facts</u>

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Further, Defendant was given ample opportunity to respond, but has made no effort to challenge the Complaint; therefore, nothing in the record before the Court suggests a factual dispute. Accordingly, this factor also weighs in favor of granting default judgment.

        5.    <u>Whether Default was Due to Excusable Neglect</u>

The sixth *Eitel* factor examines whether the defendant's failure to respond to the Complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, the proof of service filed by Plaintiff demonstrates Defendant was properly served with Plaintiff's Complaint and summons on February 17, 2016, *see* Dkt. No. 5, and the Clerk of Court has entered

1  Defendant's default for failure to respond, *see* Dkt. No. 9.  Defendant made no appearance in this
2  matter and failed to respond to the present Motion.  There is nothing in the record suggesting this
3  failure is based on excusable neglect.  *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp.
4  2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect).  Thus, this
5  factor supports default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472.  In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible."  *Id.*  However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive."  *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted).  Similarly, other courts have stated that default judgment is appropriate when a defendant refuses to litigate a case.  *See, e.g.*, *Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010).  Here, Defendant made no effort to respond to communication attempts by Plaintiff and in no way participated in the proceedings.  As such, a decision on the merits would not be possible.  In situations such as this, Rule 55(b) allows the court to grant default judgment.  This final factor weighs in favor of granting the Motion.

### 7. Summary of the *Eitel* Factors

Based on the foregoing analysis, the undersigned finds each of the *Eitel* factors weighs in favor of granting default judgment.  Accordingly, the undersigned RECOMMENDS the District Court GRANT the Motion and enter default judgment against Defendant.

**D.  Relief Sought**

After determining liability, the Court then calculates the amount of damages that should be awarded.  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012).  This two-step process is proper because while for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages.  *Id.*

///

1.    <u>Damages</u>

Plaintiff seeks $1,000 in statutory damages under the FDCPA and $1,000 in statutory damages under the Rosenthal Act.[1]  Under the FDCPA, a plaintiff may claim up to $1,000 in statutory damages.  15 U.S.C. § 1692k(a)(2).  Under the Rosenthal Act, a court may award statutory damages that are no "less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000)."  Cal. Civ. Code § 1788.30.  The Ninth Circuit has determined that "[t]he Rosenthal Act's remedies are cumulative, and [are] available even when the FDCPA affords relief."  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1069 (9th Cir. 2011).

Defendant's violations of the FDCPA and Rosenthal Act warrant an award of statutory damages, although not in the amounts Plaintiff seeks.  As an initial matter, Plaintiff's briefing includes citations to various cases wherein courts have awarded the maximum statutory damages for violations of the FDCPA and/or the Rosenthal Act, but Plaintiff does not meaningfully compare the facts of those cases to the facts alleged here.  Mot. at 9-11.  After listing the cases and the damages and attorney's fees and costs awarded in each case, Plaintiff makes the following argument:

> Just as set forth in the facts of the attached cases, the merits of Plaintiff's claims are based on the facts set forth in his Complaint, specifying the nature and quality of Defendant's contacts with Plaintiff in its unlawful attempts to collect an alleged debt. Therefore, a statutory award of $2,000.00 for Defendant's violations of the FDCPA and [the Rosenthal Act] to Plaintiff in this case is permissible and appropriate based upon the factual allegations in Plaintiff's Complaint.

*Id.* at 11.  However, in determining the amount of statutory liability, courts "shall consider . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).

While the undersigned finds Plaintiff's factual allegations suffice to establish Defendant's

---

[1] Statutory damages are available without proof of actual damages.  *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982).

liability for default judgment purposes, he has not compellingly shown entitlement to an award approaching the maximum statutory damages allowed. The alleged misconduct in this case was not egregious in its alleged "frequency and persistence," as Plaintiff alleges he received only three voicemails in a one month period.[2] *See Evans v. Creditor's Specialty Serv., Inc.*, 2016 WL 730277, at *1, 3 (N.D. Cal. Feb. 24, 2016) (finding five voicemail messages, including threats of wage garnishment and legal action, insufficient to warrant the maximum statutory penalty); *Cuevas v. Check Resolution Servs.*, 2013 WL 2190172, at *11 (E.D. Cal. May 20, 2013) (finding allegation of "calls" made on one day did not warrant maximum statutory penalty); *cf. Mulvihill v. St. Amant & Assocs.*, 2014 WL 1665229, at *2 (E.D. Cal. Apr. 24, 2014) (finding nearly 20 calls, even after plaintiff instructed defendant to stop calling him, warranted maximum statutory penalty); *Esget v. TCM Fin. Servs. LLC*, 2014 WL 258837, at *5, 7 (E.D. Cal. Jan. 23, 2014) (awarding maximum statutory damages where defendant "repeatedly" contacted plaintiff's place of work in an attempt to collect an alleged debt, including contacting plaintiff's supervisor and disclosing the alleged debt, and made false threats, including a threat to file a lawsuit and garnish plaintiff's wages). Further, there is no indication Defendant's messages included threats or intimidation. *See Neves v. Benchmark Recovery, Inc.*, 2015 WL 6957525, at *4 (N.D. Cal. Nov. 11, 2015) (finding a collection letter that contained no threats or intimidation did not constitute significant or severe non-compliance under the FDCPA). Finally, based on Plaintiff's allegations, the undersigned finds Defendant's noncompliance was intentional, which weighs in Plaintiff's favor.

In sum, the undersigned finds the frequency and persistence of Defendant's non-compliance, the nature of Defendant's non-compliance, and the extent to which Defendant's non-compliance was intentional do not weigh strongly in favor of Plaintiff's request for $2,000 in statutory damages. Courts in this District has previously awarded $400 under each statute for a single voicemail that was deceptive in nature. *See Smith v. Simm Assocs., Inc.*, 2013 WL

---

[2] In his Motion, Plaintiff argues the Court should impose the maximum statutory damages, in part, because "Defendant caused Plaintiff's telephone to ring repeatedly and continuously so as to annoy Plaintiff . . . ." Mot. at 9. However, no such allegations appear in his Complaint.

1800019, at *2 (N.D. Cal. Apr. 29, 2013) (but finding that "[t]he script of the call makes it clear that the caller attempted to hide the nature of the call"). In *Evans*, the court awarded $700 under each statute based on five voicemail messages that included threats of wage garnishment and legal action. 2016 WL 730277, at *1, 3. Here, Plaintiff received more calls than the plaintiff in *Smith* and fewer than the plaintiff in *Evans*, yet there are no allegations of threats or that the caller actively sought to hide the nature of the call during a conversation with Plaintiff. Accordingly, the undersigned RECOMMENDS the Court award Plaintiff $300 in damages under the FDCPA and $300 under the Rosenthal Act.

2.  Attorney's Fees

Both the FDCPA and the Rosenthal Act impose liability for attorney's fees and costs on defendants found liable under their respective provisions. *See* 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.309(c). Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

To determine the appropriate lodestar amount, the Court must first assess the reasonableness of counsel's claimed hourly billing rate. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). In doing so, courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits, which in this case is the Northern District of California. *Id.*

In order to assess whether the number of hours billed is reasonable, Plaintiff must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles*,

1   796 F.2d 1205, 1210 (9th Cir. 1986). The Court may reduce the hours through its discretion

2   "where documentation of the hours is inadequate; if the case was overstaffed and hours are

3   duplicated; if hours expended are deemed excessive or otherwise unnecessary." *Id.*

4   Plaintiff seeks $4,905.60 in attorneys' fees to compensate counsel for 13 hours of attorney

5   time and 4.2 hours of paralegal time. Mot. at 15. Plaintiff seeks to recover fees at the following

6   billing rates:

| | | |
|---|---|---|
| Corinne Orquiola | 6.8 hours at $433/hour | $1,948.50 |
| Ryan Lee | 5.9 hours at $387/hour | $2,283.30 |
| Taylor Tieman | 0.30 hours at $216/hour | $   64.80 |
| Paralegals | 4.2 hours at $145/hour | $  609.00 |
| | Total: | $4,905.60 |

*Id.* In support of his request, Plaintiff provided the Declaration of Adam J. Krohn, managing and founding partner of Krohn & Moss, Ltd., Plaintiff's counsel of record. Krohn Decl., Dkt. No. 12-9. Mr. Krohn attests that Krohn & Moss "has successfully resolved over 40,000 claims on behalf of consumers, thousands of whom were the victims of unfair and deceptive debt collection practices," and that the time incurred in this case "is reasonable based upon [his] experience and knowledge." *Id.* ¶¶ 2, 7. Mr. Krohn also includes detailed time entries and Biographical Statements for each attorney that worked on the case. *Id.*, Exs. 1-2. Ms. Orquiola has been practicing law for 13 years, with a focus on consumer protection. *Id.*, Ex. 2. Mr. Lee practiced at Krohn & Moss for 10 years, with a focus on lemon law and consumer protection. *Id.* Ms. Tieman received her Juris Doctor in 2015 and has been an attorney at Krohn & Moss since April 2016. *Id.*

Based on this information and the Court's awards of similar hourly rates for attorneys in FDCPA cases, the undersigned finds these rates are reasonable. *See*, *e.g.*, *Neves*, 2015 WL 6957525, at *5 (finding rates of $500 and $400 per hour reasonable "in light of [counsel's] many years of experience in this legal area"); *Martell v. Baker*, 2015 WL 3920056, *2 (N.D. Cal. June 25, 2015) (finding $400 hourly rate reasonable for attorney who specializes in consumer credit litigation and has approximately seven years of experience); *Evans*, 2016 WL 730277, at *4 (finding $320 hourly fee reasonable for attorney with nearly eight years of experience); *Young v.*

14

1  *Law Offices of Herbert Davis*, 2014 WL 3418209, at *6 (N.D. Cal. July 11, 2014) (finding rate of

2  $350 per hour reasonable). The Court also finds the $145 hourly rate for paralegal time to be

3  reasonable on the basis of rates previously deemed reasonable in the area. *See, e.g.*, *Forkum v.

4  Co-Operative Adjustment Bureau, Inc.*, 2014 WL 3827955, at *1 (N.D. Cal. Aug. 4, 2014)

5  (finding $145 hourly rate reasonable for paralegal in this District based on declarations from three

6  local consumer protection attorneys); *Hetland v. Simm Assocs., Inc.*, 2013 WL 4510594, at *2

7  (N.D. Cal. Aug. 22, 2013) (finding $145 hourly rate reasonable for paralegals).

8      The undersigned also finds the number of hours billed by Krohn & Moss to be reasonable.

9  A substantial majority of these hours were spent drafting the Complaint (1.5 hours), drafting the

10  motion for default (.60 hours), and drafting the motion for default judgment (3.1 hours). The

11  Court has found similar and/or higher hours reasonable in comparable FDCPA cases. *See, e.g.*,

12  *Neves*, 2015 WL 6957525, at *5 (finding 13.8 hours reasonable where counsel spent 3.5 hours

13  drafting the complaint and 5.4 hours drafting the motion for default judgment); *Crider v. Pac.

14  Acquisitions & Assocs., LLC*, 2015 WL 6689391, at *6 (N.D. Cal. Nov. 3, 2015) (finding 25 hours

15  reasonable); *Page v. Performance Debt Resolution*, 2013 WL 621197, at *7 (N.D. Cal. Jan. 30,

16  2013), *report and recommendation adopted*, 2013 WL 621139 (N.D. Cal. Feb. 19, 2013) (finding

17  14.80 hours reasonable); *Basinger-Lopez v. Tracy Paul & Assocs.*, 2009 WL 1948832, at *5 (N.D.

18  Cal. July 6, 2009) (finding 15.3 hours reasonable).

19      Accordingly, the undersigned finds the hours reported by Krohn & Moss to be reasonable

20  and therefore RECOMMENDS the Court award Plaintiff's counsel for Neves $4,905.60 in

21  attorney's fees.

22      3.    <u>Costs</u>

23      Plaintiff also seeks costs in the amount of $460—specifically, $400 in filing fees and $60

24  in service costs. Both the FDCPA and the Rosenthal Act permit a court to award costs. 15 U.S.C.

25  § 1692k(a)(3); Cal. Civ. Code § 1788.20(c). The undersigned finds these costs reasonable and

26  therefore RECOMMENDS the Court award costs in the amount of $460.

27                                        **CONCLUSION**

28      Based on the above analysis, the undersigned **RECOMMENDS** the District Court

1  **GRANT** Plaintiff Derek Freligh's Motion for Default Judgment and enter judgment against
2  Defendant ROC Asset Solutions, LLC.  The undersigned further **RECOMMENDS** the Court
3  award Plaintiff $600 in statutory damages, $4,905.60 in attorneys' fees, and $460 in costs.
4      Plaintiff shall serve a copy of this Report and Recommendation upon Defendant.  Pursuant
5  to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file
6  any objections within 14 days after being served.
7      **IT IS SO RECOMMENDED.**

9  Dated: June 8, 2016

                                                _____
                                                MARIA-ELENA JAMES
                                                United States Magistrate Judge

*United States District Court*
*Northern District of California*